CASE 77—JUNE 17.

# Massie, &c., vs. Griffin, &c.

### APPEAL FROM ANDERSON CIRCUIT COURT.

M. resided and owned some estate in A. county, Ky. Whilst on a visit to Missouri he made a will, a portion of which is as follows: " It is my wish that all the notes and accounts found among my papers (vs.) my brothers, should be destroyed or handed over to them. Should I never return. I also desire that each of them should have two hundred dollars in addition, and the remainder of my property divided equally between the heirs of T. and J. M. M., at their respective ages of 18—should it be deemed judicious to do so." The remainder of the paper provides that B. should have indulgence on the amount due for a farm, and that two persons, naming them, should attend to his affairs. *Held*—That the words "should I never return " are confined to the disposition of the notes and accounts. And that, although the testator returned to his residence, the evidence of extrinsic facts, recited in the opinion, consisting of acts and declarations of the testator, (which is admissible for that purpose,) showed a preservation and recognition of the paper by him as his will. And that the paper must be established as his true last will and testament.

T. N. & D. W. LINDSEY for appellants.

J. H. D. McKEE, on same side, cited *Williams on Executors*, *2d Amer. ed.*, 102–3, *and cases referred to; Act of* 1797, 2 *Statute Law*, 1539 ; 7 *Dana*, 94 ; 5 *J. J. Mar.*, 471.

W. W. PENNEY, for appellees, cited *Williams on Executors*, 153–4; 2 *Watts & Serg.*, 145; 6 *Ves.*, 608; 1 *Ves.*, 109 ; 1 *Phillim.*, 485.

JUDGE WOOD DELIVERED THE OPINION OF THE COURT :

This is an appeal from an order of the circuit court for the county of Anderson, rejecting a paper, which had been offered and admitted to probate, in the county court for said county, as the last will and testament of T. P. Massie, deceased.

The principal question presented upon the appeal for our decision is, whether or not the paper aforesaid is the last will of said Massie.

The record shows, with sufficient certainty, the following facts, viz : That T. P. Massie was a resident of the county of Anderson, and that he owned some estate in that county. That in 1850 he was in the State of Missouri, at Flint Hill, in the county of St. Charles. That he afterwards returned to his

residence in Kentucky, and in 1853 or 1854 went to Missouri again. From this visit he again returned to his residence, and in 1855 went to Missouri the third time. On his way home, upon the occasion of this third visit, he died in the city of Louisville. That whilst said Massie was at Flint Hill, in Missouri, on the 20th day of August, 1850, the paper now propounded as his last will was written and signed, and attested by Allen and Broadhead, by an indorsement on the back thereof, at the request of Massie. That on the day it was attested by the witness Allen, which was the day of its date, the paper was delivered, folded and sealed, to said Allen, in whose possession it remained between four and five years. That in the month of July, 1855, Massie called upon Allen personally, and demanded the paper; whereupon it was surrendered to him. That said paper was "wholly written by" Massie, and that his name was "subscribed thereto by himself."

It does not certainly appear where the paper was found after the death of Massie; but we presume that it was found upon his person, or amongst the papers which he brought with him from Missouri, as he had not been home after he received it before he died. It was produced in the county court of Anderson, and offered for probate by John M. Massie, acting for himself, and as guardian for Mary and Thomas Massie.

The appellees insist that the writing was never published by T. P. Massie as an *absolute* will, but that it was *contingent*, dependent upon the event of Massie's returning to his home in Kentucky or not; and that as he did return, the will could have no effect, but was void. They assume the position that the writing contains and furnishes evidence that it was executed for a temporary purpose, and was to become a valid will only on the contingency that Massie never returned to his home in Kentucky.

We will quote so much of the paper as exhibits the grounds for this position, as follows, viz: "It is my wish that all the notes and accounts found among my papers (vs.) my brothers, should be destroyed or handed over to them. Should I never return. I also desire that each of them should have two hundred dollars in addition, and the remainder of my property

divided equally between the heirs of Thomas and John M. Massie, at their respective ages of 18—should it be deemed judicious to do so." The remainder of the paper is the expression of two wishes. First, that a Mr. Bright should have every indulgence on the amount due for a farm. Second, that Mr. J. B. Allen and Dr. Wm. H. Lee would attend to his affairs.

It is contended by appellees that the words—" should I never return "—apply to the whole writing, and give it the character of a contingent will, or provisional disposition of the property of the testator.

The appellants insist that those words are limited in their application to that portion of the writing which disposes of the notes and accounts which might be found amongst his papers against his brothers. That *that* was a contingent or conditional disposition of the notes and accounts, but that the entire paper was not a conditional one.

We confess that it is difficult to determine, from the paper itself, what is the true construction. The punctuation is very singular, and not according to any rule. There appears to be a period, or full stop, both before and after the words " should I never return."

But it seems to the court that the most natural and easy reading of the paper is to confine those words to the disposition of the notes and accounts, making it one sentence from the commencement down to, and including, the conditional words. " It is my wish that all of the notes and accounts found among my papers (*vs.*) my brothers should be destroyed or handed over to them, should I never return." That the point or mark after the word them was intended to be a comma, and not a period or full stop.

The testator knew if he returned to Kentucky he could destroy or hand over the notes and accounts himself; but if he never returned, then it was to be done by some one else.

If the words expressive of the condition are made to apply to the dispositions which follow them, they cannot be made to apply to the one which precedes them. In that case we will have the disposition of the notes and accounts left isolated and

in full force. This would be an unnatural and forced construction.

If the testator intended to make the whole instrument contingent and conditional, he could very easily have inserted the condition in the remaining portion. Thus: "I also desire, in the event that I do not return." That he did not thus insert it is very persuasive, at least, that he did not intend the entire paper to be conditional.

If he had commenced the writing with the use of the words "should I never return," they would naturally have applied to every part of it; and it seems to us that he would have thus used them had it been his intention to make the entire paper contingent.

But there is evidence of extrinsic facts which relieve the question, in a great degree, of doubt.

It may be supposed at first blush that such evidence is not admissible. A little reflection, however, and a distinct view of the question actually before the court, will show the admissibility of the evidence.

It is now well settled that evidence of extrinsic facts is admissible in aid of the exposition of wills, where they are such as, in their nature and effect, simply explain what the testator has written, and not what he intended to have written. (*Allen and wife vs. Vanmeter's devisees*, 1 *Met. Ky. Rep.*, 264, *and authorities there cited.*)

The true question now before us is not one of exposition, but whether, in fact, there was a will made. Is the paper propounded, in fact, the last will of T. P. Massie? The very nature of the question makes it not only proper, but necessary, that we resort to extrinsic facts to determine it. It is the common every-day practice, in establishing writings as wills, to make proof of the acts and declarations of the makers in reference to them.

We naturally inquire, then, how did Massie regard and treat this paper?

In *Williams on Executors* (*vol.* 1, *p.* 154) it is said the courts are cautious how they construe conditions such as the one here presented. Therefore, where a testator, by three letters, gave

certain testamentary directions, " in case I should die on my travels," it was held, that although he returned, and lived many years afterwards, yet as, by subsequent acts, he recognized the papers two years before his death, his return was not such a defeasance as to invalidate the disposition of his property directed by them. In *Burton vs. Collingwood,* a will written eighteen years before the testator's death, containing this passage, " lest I die before the next sun, I make this my last will," was admitted to probate, the court holding the disposition not contingent, and adherence being shown by careful preservation. . (See *Williams, vol. 1, p. 154–5, and authorities cited in support of the text.*)

On the day of its execution the paper now offered as Massie's will was folded and sealed up, and handed to Allen, one of the subscribing witnesses thereto. It was permitted thus to remain in his hands between four and five years, notwithstanding the fact that Massie went to Kentucky and returned to Missouri as often as twice before 1855. This indicates a preservation and recognition of the paper by Massie as his will during all of this time. Otherwise he would have withdrawn it from Allen and destroyed it.

If he had intended it to be a will only upon the contingency of his return to Kentucky upon the occasion of his visit to Missouri in 1850, certainly when he went again to Missouri in 1853, he would have withdrawn and canceled the paper. This he failed to do.

But when he did demand and receive from Allen the paper in 1855, his acts and declarations in reference thereto clearly show that he had up to that time regarded the paper as his will, and did then so regard it.

Allen testifies that at the time he gave Massie the paper, the latter told him there was a misunderstanding between Mc-Ginnis, a brother-in-law, and himself, at the time he executed it; and his intention was, in case of his death, McGinnis should not have any of his property. But, continued Massie, McGinnis is now dead—I have nothing against my sister, and it would be wrong to cut her off. " He gave me this as a reason for withdrawing the instrument of writing," says the witness.

This was in July, 1855. If the paper was not then considered by the testator to be his true last will, why withdraw it? No reason can be given. There can be no doubt that he then held it to be his will, and believed that by it his sister would be cut off from any participation in his estate.

The testimony of young McGinnis is to the same effect. He says that about the 5th day of July, 1855, he heard T. P. Massie say that he intended to destroy the writing he had made, dated August 20, 1850, and that he intended to make a new will. He said he did not intend that *that* writing should be his will.

Undoubtedly the paper of the 20th August was, on the 5th of July, the will of Massie, else he would not have expressed an intention to destroy it and make "*a new will*." If that were not his will, there would have been no reason for destroying it and making a new one.

There is no proof showing a revocation in any of the modes prescribed by the statute of wills.

We are constrained to decide that the paper now offered as the last will of Thomas P. Massie, is, in fact, his true last will and testament.

Wherefore, the order of the circuit court rejecting said will *is reversed*, and the cause is remanded with directions to affirm the order of the county court admitting it to probate.