ALANSON WILDER

*vs.*

FRANKLIN DeCOU, *et al.*

D. bought of B. certain personal property, and gave his negotiable note therefor, which B., after maturity, indorsed and transferred to plaintiff. In an action thereon against D. the defense was, that B. falsely and fraudulently represented to D. that said property amounted to a specified sum, and was worth that sum; that D., relying on the truth thereof, bought said property for that sum; that said property really amounted to no more than a much smaller specified sum, and was worth no more; that when the note fell due B. presented it to D. for payment, who refused to pay, assigning such fraud as his reason; that thereafter B. intending to defraud D., transferred, or pretended to transfer it to plaintiff, who then had notice of the matters aforesaid. At the trial plaintiff admitted that the note was transferred after due, and that defendant should have the benefit of any defense that he could have had against B. if he had been the plaintiff. To maintain the defense, the same facts must be proved which would be necessary to maintain an action for damages for deceit in the sale.

Shortly before buying, an inventory of the property had been taken, by which it appeared to be less in amount than B. had represented. Just before signing the papers, B. took D. aside and told him, "that there was a mistake in the amount according to the inventory, but that the whole amount was there; that it was a mistake in taking the account of stock." *Held*, that taking this to mean either, that through mistake part of the property had been left out of the inventory, or that the property had through mistake been undervalued, in either case it was a representation of a material fact, and if false and fraudulent, an action would lie.

B. being called for plaintiff, was asked by defendant in cross-examination, if he presented the note to D. for payment, which, being objected to, was excluded. Defendant then offered to prove that "B. is a party

Wilder v. DeCou et al.

interested, though there has been a transfer to plaintiff for the purpose of suing defendant," which, being objected to, was excluded, although defendant insisted that it was competent upon the issue of fraud. *Held*, that as by plaintiff's admission aforesaid, he stood in B.'s shoes, the proposed evidence would have no tendency to prove that the note was procured by fraud; nor would the fact that B. was the real party in interest be pertinent as affecting his credibility, and the value and weight to be given to his testimony, his interest being precisely the same whether he were the owner of the note, or a *bona fide* indorser of it to plaintiff.

Defendant D. being called to testify for himself, was asked if his partner in the purchase complained of the matter to B. *Held*, irrelevant and incompetent.

The defendant requested the court to charge as follows: 1st. That if B. before and at the time of the sale, represented to D. that the amount and quality of said property was much greater than in fact and truth it was, well knowing that such representation was false, and D. purchased believing and relying on the truthfulness of such representations, said transaction was fraudulent; 2d. If the owner of personal property, having means of knowledge, represents that he knows a state of things to be true, when he has not such knowledge, and a third person relies upon such representations to his injury, it is a fraud. The court gave the first, and gave the second with this qualification: "that if a man represents that to be true, which he does not know to be true, it is a fraud though he may not know it to be untrue, cannot be laid down as a proposition of law in itself universally correct; but there may be other circumstances connected with the transaction, from which such statement may appear to have been made in fraud." *Held*, that though abstractly correct, this qualification as given in connection with the instruction, and as qualifying it, might mislead the jury to defendant's prejudice, by withdrawing from their minds the consideration of the effect of a statement made *as of B.'s own knowledge*, leading them to believe, that his false representations, though of that unqualified character, would not, of themselves, be fraudulent.

The defendant also requested the court to charge as follows: 3d. Although D. might have possessed himself of knowledge, if the representations of B. diverted him from the exercise of those means of information at his hand, he has his remedy against false representations by which he has been injured. The court gave this third instruction with this qualification: "a person may if he choose rely upon his own judgment, but it is not to be presumed, in the absence of an express guaranty,

that he neglected the means of observation or information at his hand." *Held*, that though a correct general proposition, yet, that as a qualification of this instruction, it might mislead, since it, in effect, does away with the fact which the instruction assumes, that D. was diverted by B.'s representations from looking for himself.

This action was brought in the court of common pleas for Ramsey county against Franklin DeCou, the maker, and Jacob W. Bass, the indorser, of a promissory note. DeCou, only, answered, and a trial was had before a jury, resulting in a verdict and judgment for plaintiff. Defendant appeals to this court. The case is fully stated in the opinion.

LORENZO ALLIS, and JOHN B. BRISBIN, for Appellant.

GEORGE L. OTIS, for Respondent.

*By the Court.*—RIPLEY, CH. J.—Bass being a partner in the firm of Seymour, Willim & Co., and an owner of one-fourth of the business stock and property thereof, sold out to DeCou & Corlies.

The action is brought by the endorsee of a note given by DeCou to Bass, for the unpaid part of the purchase price.

The defence is, that on said sale, Bass falsely and fraudulently represented to defendant, that his said interest amounted to $6,128.39, and was worth that sum ; that defendant, relying on the truth thereof, purchased said interest for said sum ; that in truth and in fact, said interest amounted to no more than $3,888.74, and was worth no more ; that when said note fell due, Bass presented it to defendant for payment, who refused to pay it, assigning such fraud as his reason therefor ; that thereafter, Bass intending to defraud the defendant, transferred, or pretended to transfer it to plaintiff, who then had notice of the matter aforesaid.

At the trial plaintiff admitted that the note was transferred after maturity, and that defendant should have the benefit of any defence that he could have had against Bass, if he had been the plaintiff.

Defendant to maintain the issue on his part, introduced evidence tending to prove that on said sale, Bass represented to him that said stock and property amounted to $20,000, altogether; that his share of it was $5,000, and that it was worth $5,000.

Defendant, being called as a witness in his own behalf, testified that shortly before buying, and on the occasion of one Sabin's coming into the firm, an account of stock had been taken, amounting to no more than about $16,000, in the whole; that just before signing the papers, Bass called him aside, and told him that " there was a mistake in the amount, according to the valuation just made, but that the whole amount was there. He said it was a mistake in taking the account of stock. I supposed it was all right. I took it on his representation. He said it arose through a mistake in taking stock."

This we understand to mean, either that through mistake part of the property had been left out of the inventory, or that the property had through mistake been undervalued.

The witness, indeed, stated on cross-examination, that " it was not so represented to us that this was because the articles were undervalued; the shortage was not represented to us in this manner." We think, however, that the witness here evidently refers to an intentional undervaluation.

The witness further stated that " the inventory which Bass had spoken of was correct."

To maintain this defence, the same facts must be proved which would be necessary to maintain an action for damage for deceit in the sale. *King vs. Eagle Mills*, 10 *Allen*, 548.

A representation that a mistake had occurred in either of the ways above mentioned, would be a representation of a material fact, and if false and fraudulent, an action would lie.

We cannot, therefore, agree with the respondent, that the evidence goes only to mere representation by Bass of the *value* of his interest, and therefore has no tendency to prove fraud.

While it is true, that in actions on the case for deceit founded upon false affirmations, there has always existed the exception that naked assertions of value, though shown to be false, are not the ground of action as between vendor and vendee (*Medbury vs. Watson*, 6 *Met.* 247) the above testimony, at least, tended to prove false assertions as to matters of fact, not opinions.

We are not, however, to be understood, that an assertion that a given article is worth a given sum, may not in a given case be the assertion of a fact, and not of an opinion.

It may be so made as to convey the idea that the article would sell for that sum in the market, that it would bring that sum in cash.

That would clearly be a representation of a fact, and if one makes a representation of a fact as of his own knowledge, in relation to a matter susceptible of knowledge, and such representation is not true, if the party to whom it is made relies and acts upon it as true, and sustain damage by it, it is a fraud and deceit for which the party making it is responsible. *Page vs. Bent*, 2 *Met.* 368, *and cases cited*.

But in a matter of opinion, judgment and estimate, if one states a thing as of his own knowledge, if he in fact believes it, and it is not intended to deceive, it is not a fraud, although the matter stated is not in fact true. The reason is, that it is apparent from the subject matter, that what is thus stated as knowledge must be considered and understood by the party to whom it is addressed as an expression of strong belief only,

because it is a subject of which knowledge in its strict sense cannot be had. *Page vs. Bent, supra.*

Said Bass being called for plaintiff was asked by defendant in cross-examination, if he presented the note to defendant for payment. This was objected to by plaintiff, and the objection sustained.

Defendant then offered to show that "Bass is a party interested in this suit, although there has been a legal transfer to the plaintiff, a transfer made for the purpose of suing DeCou." This was objected to by plaintiff, and the objection was sustained.

The defendant contends that the evidence would have been competent upon the issue of fraud; that the answer set up that the note had been procured by fraud; that on its presentation by Bass to DeCou for payment, DeCou, for that reason, refused to pay, and so stated to Bass, and that afterwards Bass transferred the note to plaintiff for the purpose and with the intent of defrauding DeCou in the premises, of all which plaintiff had notice; that the facts offered to be shown would be material facts, for the consideration of the jury, bearing upon the issue of fraud.

The plaintiff, however, had admitted that if the note were procured by fraud, that he was not an innocent holder for value. He stood in Bass' shoes.

It would have no tendency to show that the note was procured by fraud, to prove that Bass did not transfer it till after it was due, and payment had been refused on the ground of fraud, or that Bass was still the owner of the note, the transfer being for the purpose of having the suit brought in plaintiff's name.

These matters could only be material on an issue as to whether the plaintiff was a *bona fide* holder for value, and after

the plaintiff's admission, there was no such issue for the jury to try.

All that the offer comes to is that Bass, upon being informed that DeCou will resist payment, as aforesaid, takes a step which has not the least influence upon the suit, but leaves him just where he was with respect to any such defence.

How far this is from being evidence upon the issue before the jury, is perfectly apparent.

The defendant further insists, that the fact that Bass was still the real party in interest, would be pertinent as affecting his credibility as a witness, and the value and weight to be given to his testimony.

It was of no consequence, however, whether the transfer was real, or not. If real, Bass was liable to plaintiff as indorser, though DeCou were not liable as maker. His interest is no greater, if he is the real plaintiff. If the defence be established, the loss to Bass is the same, whether he be the owner, or the *bona fide* indorser of the note. In either case, he has precisely the same temptation not to tell the truth. It was, therefore, irrelevant to the issue before the jury, which he was. This was a sufficient reason for excluding the evidence.

The defendant re-called DeCou and asked him, Did Corlies complain of matters to Bass? which was objected to, and excluded as irrelevant and immaterial, as in itself it certainly is.

Defendant, however, says it was designed to draw out an interview between Corlies and Bass, relative to the subject matter at issue. " The statement and acts of Bass while such subject matter was under discussion between them, were certainly likely to be very material."

Whatever the question might have been designed to draw out, it certainly called for no statements and acts of Bass, material or immaterial.

Those, if the defendant had wished, might have been elicit-

ed, notwithstanding the exclusion of this interrogatory, by questions properly framed to meet the end.

The defendant requested the court to charge the jury as follows:

1.  That if J. W. Bass, prior to and at the time of the sale by him to said defendant DeCou and his partner, of said Bass', so called, prison interest, represented to said DeCou that the amount and quality of his said interest was much greater than in fact and in truth it was, and said Bass at the time of such representation well knew that such representation was false, and said DeCou believing and relying on the truthfulness of such representations, purchased the said interest, said transaction was fraudulent.

2.  If the owner of personal property, having means of knowledge, represents that he knows a state of things to be true, when he has not such knowledge, and a third person relies upon such representation to his injury, it is a fraud.

3.  Although DeCou might have possessed himself of knowledge, if the representations of Bass diverted him from the exercise of those means of information at his hands, he has his remedy against false representations by which he has been injured.

The court gave the first instruction asked, and gave the second with this qualification: " That if a man represents that to be true, which he does not know to be true, it is a fraud though he may not know it to be untrue, cannot be laid down as a proposition of law in itself universally correct, but there may be other circumstances connected with the transaction, from which such a statement may appear to have been made in fraud."

The qualification was in itself correct.   Abstractedly speaking, it is not fraud to state that to be true which is not true, the speaker being ignorant whether it be true or untrue.   He

may still make the statement *bona fide,* with a belief in its truth. Injury caused by a statement false in fact, but not so to the knowledge of the party making it, or with intent to deceive, would not support an action. 2 *Smith Lea. Ca.* 170 ; *Haycraft vs. Creasy,* 2 *East.* 92 ; *Evans vs. Collins,* 5 Q. B. 820 ; *Ormrod vs. Huth,* 14 *Mees. & Wels.* 650; *Barley vs. Walford,* 9 Q. B. 197; *Lord vs. Goddard,* 13 *Howard,* 211 ; *Faribault vs. Sater,* 13 *Minn.* 223.

But it is different if he make an untrue representation of a material fact, *as of his own knowledge,* not knowing whether it be true or false. *Stone vs. Denny,* 4 *Met.* 151.

From the reasons given by the court below for denying the motion for a new trial, it seems that the court was under the impression that unless one makes a "special representation, of his knowledge ; " unless he "expressly represent that he knows " that the fact is as he states it, he cannot be said to make the assertion, as of his own knowledge, and that he conceived that the instruction asked might *per se* mislead the jury as applied to the evidence. " What constitutes a representation of one's own knowledge? It may be said that an assertion implies a representation that he who asserts, knows that whereof he speaks. In that view the charge is too broad, in not being confined to one who *expressly* pretends a state of knowledge on his part."

"The qualification, was for the purpose of explaining to the jury the distinction, and to prevent an erroneous conclusion from the instruction asked, though with the latter no particular fault was found as a general proposition."

That is to say, that there being no evidence of any such special pretences on Bass' part, the statements aforesaid, testified to by defendant, were not statements as of Bass' own knowledge, and, therefore, that the instruction might mislead the jury.

Wilder v. DeCou et al.

The instruction, however, was not objectionable on that account. If it were not (as the court below thinks it was not) in terms confined to the case of one who "expressly pretends a state of knowledge on his part," still, no such special pretense of knowledge was necessary.

An unqualified affirmation amounts to an affirmation as of one's own knowledge. *Stone vs. Denny, supra.*

It is indeed for the jury, in any given case, to say what was the real character and effect to be given to the defendant's affirmation, whether or not it was to be treated as the statement of a fact for the truth of which the affirmant was understood by the vendee to assert his personal knowledge. *Stone vs. Denny, supra.*

But the qualification could not be necessary to prevent the jury from being misled by the instruction, while at the same time, it is obvious, that, as *given*, that is, in connection with and as a qualification of it, it might mislead the jury, by withdrawing from their minds the consideration of the effect of a statement made as of one's own knowledge, leading them to the belief that though Bass' representations might have been of that unqualified character as to answer that description, yet that they would not, of themselves, be fraudulent.

This would clearly be incorrect. It is fraudulent to affirm what is false, knowing that it is false. It is equally so to affirm what is false, knowing that one is affirming as to the existence of a fact, about which one is in entire ignorance.

In either case, the falsehood is intentional. Will any one contend that it is not a fraud for a vendor to tell the vendee a willful lie respecting the subject of sale?

But the instruction itself, says the plaintiff, omits the essential element, that the supposed state of facts did not in fact exist.

If it existed, then, though it would be a willful lie for one who did not know whether it did or not, to say that he knew that it existed, it would be an *immaterial* lie.

And so it would be, if he said he knew that a state of facts existed, as to which it was wholly immaterial whether they existed or not. *Hazard v. Irwin*, 8 *Pick*. 95.

But we think the instruction implies the materiality of the representation, from the supposition that another relies upon it to his injury. How can damage be predicated of what is of no consequence? The jury could not have been misled on the testimony in this direction, had the instruction been given without the qualification.

The court gave the 3rd instruction as asked, with this qualification. " A person may if he choose refuse to rely upon his own judgment, but it is not to be presumed in the absence of an express guaranty, that he neglected the means of observation or information at his hands."

This, of course, is a correct abstract proposition. If one asserts that in a given case he relied on the statement of another, instead of using the means of information at his hands, the burden is on him to make that out.

Where persons can see for themselves, if they choose to look, the presumption is, that they *do* choose to look, and do look and see for themselves.

But how can one who is *diverted* from looking for himself, be said to *refuse* to look, or to *choose* to refuse to look and see for himself? The qualification, therefore, has no reference to the instruction. Given as a qualification, (as the case finds that it *was* given) it is evident that it might mislead the jury. It would have been entirely proper for the court, as a separate instruction to have told the jury, that in considering the question whether Bass' representations did or did not divert DeCou

Wilder v. DeCou et al.

from inquiry, the presumption was that he did inquire for himself.

But this qualifies an instruction which assumes that DeCou *was* diverted from such inquiry, and really does away with such assumption.

The plaintiff, however, contends that the instruction asked was itself erroneous, in that such representations of Bass are not stated as false.

While it is possible that this objection might be answered by the exercise of some ingenuity, the request is nevertheless wanting in clearness, and leaves room for criticism. On a second trial, however, the defendant could supply any deficiencies which may exist, and since the case must go back, we shall not now consider how far the request, as it is at present, is or is not open to the objection made.

The plaintiff further suggests that the instruction was a pure abstraction; that there was no evidence in the case tending to show that DeCou's mind was, or could have been diverted by anything that Bass said.

The defendant testified, however, that he took the property on the representations, supposing it was all right. A belief in any given state of facts would certainly have a tendency to prevent one from making any further inquiry, and if one negotiating for a purchase of property is brought to entertain such belief by the statements of his vendor, and in consequence does not inquire further, it may well be said, that the statements diverted him therefrom. And if the representations were wilfully false, it does not lie in the vendor's mouth to say that the vendee ought not to have relied upon them.

On the whole, while the instructions in question are greatly wanting in fullness, yet we think that given in connection with the first, they would have been understood by the jury as stating correct general propositions; but in applying them as

qualified, it seems to us, as we have said, that the jury might have been misled, to the defendant's prejudice.

Judgment therefore reversed.