Barney, J.,
dissenting:
I can not agree with the majority of the court as to the effect of the facts as determined by the ^fourth finding. Paragraph 48 of the specifications provides that “ the material as far as known is shown by borings, drawings of which may be seen at this office, but bidders-must inform themselves as to the nature of the material.” It appears by the above finding that the drawings above mentioned did- not contain a correct statement of the conditions or materials found in making said borings; that obstructions were mqt which prevented penetration, sunken logs were encountered, and that no record thereof was ever made or exhibited- on said drawings. When the work under the contract came-to be done the plaintiffs found the materials were- more difficult and expensive to penetrate and excavate than ordinary sand and gravel and clay, such as described or named in thé exhibited drawings. The damage caused thereby to the plaintiffs is found in said finding to be $6,150.
The theory upon which relief to the plaintiffs has been denied for the damage resulting from this discrepancy beT tween the materials as shown by the drawings exhibited and as actually encountered is based, as I think, upon a wrong conception of the law applicable to such cases. This is not *352 an action in tort to recover damages for deceit; neither is it an action in equity to rescind a contract for the same reason. But so far as this branch of the case is concerned it is a suit upon a contract to recover damages on account of a misrepresentation therein contained amounting to a warranty. While this may be said to have been assumed in the majority opinion of the court, the decision upon this branch of the case appears to have turned upon the question of deceit as that term is usually understood in the law. Warranty is the gist of the suit in this item of the case, and as I understand the law the question of scienter does not enter into its consideration. It makes no difference what the object of taking the borings was, whether the obstructions encountered were innocently omitted from the drawings or not, or whether the Government officers were honest or dishonest in making the representations they did or not. It is simply a question as to whether representations as to the materials to be encountered were made which were not true, whether these representations were material, and whether the plaintiffs had a right to rely upon them and did rely upon them to their damage; in other words, whether the representations were a valid part of the contract.
I think the rule is universal that when a party sues in contract for a breach of warranty the motive' of the warrantor, or his knowledge or ignorance of the representations made, have nothing to do with the case whatever. In technical language it is not necessary in such an action either to allege or prove the scienter. (Bishop on Frauds, 29; Schuchardt v. Allen, 1 Wall., 359, 368; Shippen v. Brown, 122 U. S., 595.)
Even if this were an action in equity between private parties to rescind the contract on the ground of fraud, I think the findings would sustain such an action. An extensive discussion of this proposition is perhaps unnecessary, but its correctness reenforces the proposition that the findings will certainly sustain a recovery under finding iv of this case. The whole doctrine upon this subject is well stated in Story’s Equity Jurisprudence, where it is said (sec. 193) :
“ Whether the party thus misrepresenting a material fact, knew it to be false' or made the assertion without knowing *353 whether it were true or false is wholly immaterial, for the affirmation of what one does not know or believe to be true is equally, in morals and law, as unjustifiable as the affirmation of what is known to be positively false. And even if the party innocently misrepresents a material fact by mistake, it is equally conclusive, for it operates as a surprise and imposition upon the other party.”
The law is equally well settled by the Supreme Court in Smith v. Richards (13 Pet., 30), which was an action to set aside a contract for fraud, where it was said:
“The principles of these cases we consider founded in sound morals and law. They rest upon the ground that the party selling property must be presumed to know whether the’ representation which he makes of it is true or false. If he knows it to be false, that is fraud of the most positive kind; but if he does not know it, then it can only be from gross negligence; and in contemplation of a court of equity representations founded on mistakes, resulting from such negligence, is fraud. 6 Ves., 180, 189; Jeremy, 385, 386.) The purchaser confides in it, upon the assumption that the owner knows his own property and truly represents it; and, as was well argued in the case in Cranch, it is immaterial to the purchaser whether the misrepresentation proceeded from mistake or fraud. The injury to him is the same, whatever may have been the motives of the seller.” (75., 38.)
This question, however, as already said, it is not necessary to discuss here, because this is an action ex contractu, and the ordinary jurisdiction of this court extends to no other.
It is said in Parsons on Contracts:
“ It is certain that misrepresentation may not imply fraud in fact, because it may spring wholly from mistake, and nothing would be gained by calling a misrepresentation, which is innocent in fact, fraudulent in law. It is enough to say that material misrepresentations which go to the substance of a contract avoid that contract whether they are caused by mistake and occur wholly without fault or are designed and fraudulent.” (2 Parsons on Contracts, 786.)
Or, as was said by the late Justice Harlan:
“ Where the representations are material and are made by the vendor or lessor for the purpose of their being acted upon, and they relate to matters which he is bound to know or is presumed to know, his actual knowledge of them being *354 untrue is not essential.” (Lehigh Zinc & Iron Co. v. Barnford, 150 U. S., 665, 673.)
The case of Barndt v. Frederick (78 Wis., 1) was a suit brought to recover damages on account of misrepresentations made as to the value of silver mining stocks, and one of the questions involved in the decision of the case was, whether the pleadings showed it to be an action ex delicto or an action ex contractu. In the discussion of that question the court said:
“ Before the plaintiff can recover on the implied assumpsit he must show that the defendant made representations of fact materially affecting the value of the stock; that the plaintiff relied upon such representations and purchased the stock on the faith of them, believing them to be true; that they were false; and that, within a reasonable time after discovering they were false, the plaintiff rescinded the contract of purchase by returning or offering to return the stock to the defendant. It need not be averred or proved that the defendant knew his representations were false. His legal liability remains although he believed and had good reason to believe his representations true.”
Fraud or deceit, as those terms are usually understood, have nothing to do in the decision of this case. I say as “ usually understood,” because their use usually implies conscious dishonesty, which, as I understand it, cuts no figure in this case. It is doubtless true and may be assumed that the officers of the Government who made the representations which preceded the making of this contract were honestly mistaken as to the incorrectness of the drawings exhibited with the specifications; and it may be assumed that the omission from these drawings of the record of the sunken logs encountered and of the borings which were abandoned because of obstructions encountered, was made innocently and with no intent to deceive the plaintiffs or anyone.
What are the facts in this case relating to this item as disclosed by the record and the findings ? The advertisement for bidders was dated December 20,1899, and the time for receiving proposals was limited to 12 o’clock noon on the 20th of January, 1900, 31 days, including Sundays and holidays. It is not disclosed when this advertisement came to the notice *355 of the plaintiffs or when their bid was made, but it does appear that their place of business was Chicago, Ill., and it may well be assumed that it was after January 1, 1900', before their representative got to the site of the work. The record from Government reports further shows that the Government had previously made borings on this site to the extent of 6,520 linear feet and to a depth of from 20 to 35 feet below the river bed; and it was drawings of these borings which were shown to the plaintiffs before making their bid and which the specifications say show the materials to> be excavated “ as far as known.” It is undisputed and found by the court that these drawings did not show the materials to be excavated “ as far as known ” to the defendants. On the contrary, 16 borings where obstructions had been encountered and at least three borings were sunken logs had been encountered had been made which were not shown on the drawings at all. In fact, the only information which the Government had obtained through these borings which it was important the plaintiffs should know before making their bid was omitted from the drawings.
Of course it is elementary that either in actions for deceit or upon warranty mere expressions of opinion are not actionable and the misrepresentation must be as to some fact; but in the case at bar the misstatement made did not involve a question of opinion but was a misstatement as to a material fact upon which the plaintiffs had a right to rely. From all the circumstances surrounding the case we must assume that it was known that the plaintiffs must rely in a large measure upon this statement as to the character of material to be encountered in making up their bid, for it is hardly necessary to say that the Government agents knew that the plaintiffs had no time before making their bid to make their own investigation, at least to anywhere near the. extent of the investigations made by the Government as shown by the drawings exhibited. It was but little more than idle mockery to say to the plaintiffs to look for themselves. Here was a fact stated to them upon which they had a right to rely. I can not agree to the principle that a positive misstatement of a fact can be made under such circumstances to prospective bidders and then be relieved from responsibility by a warn *356 ing to look out to ascertain that such statements are not true. True, it may be and doubtless is that the Government officers who made these statements were innocent of any wrong intent and that all concerned in the mistaken drawings are equally innocent, yet the fact remains that the drawings did not disclose all the Government had discovered in making its investigation, and the plaintiffs were equally deceived whether this was done innocently or otherwise.
I do not contend that there was any warranty on the part of the Government as to the character of the material to be excavated, but I do contend that there was a representation amounting to a warranty that the drawings exhibited to the contractors showed all that the Government knew upon that subject, hence the Simpson case (172 U. S., 372) has no application here. There was no claim in that case that the drawings exhibited to the contractors did not show all the information in the possession of the Government.
It has repeatedly been held that it is of no avail for a party charged with making misrepresentation to say that the party deceived was wanting in caution and vigilance, where the parties to the contract do not stand upon an equal footing and the facts were within the peculiar knowledge of the one making the misrepresentation. (Bishop on Frauds, 71 ; Wannell v. Kem, 57 Mo., 478; Wylder v. DeCon, 18 Minn., 470; Webster v. Bailey, 31 Mich., 36; Roseman v. Howland, 43 Cal., 111.)
In Rawlins v. Wickham (Law Jour. 28, N. S., Equity, 188) the vice chancellor said:
“ It has been urged that the means of verifying the representations which were unquestionably made to the plaintiff were open to the plaintiff. But that is no defense against a charge of misrepresentation. It frequently happens in cases of this nature that the means of ascertaining the truth are within the power of the complainant, but it has never been held that in order to entitle him to rescind his contract he is bound to show that he resorted to all the means of information in his power. The very motive of misrepresentation is to check inquiries of this nature.”
The case of Webster v. Bailey (supra) is particularly applicable in the decision of this case. That was an action to *357 rescind a sale of real estate on the ground of misrepresentation as to its value, and there as in the case at bar, the injured party was told to go and look at the land himself (it being some distance from the place where the bargain was concluded) and was promised that he would have his expenses paid if he did not trade, but was to pay them himself if he did trade. He did not go and examine the lands himself, but relied upon the representations made to him. In affirming a decree rescinding the sale, while discussing the question of intent, Campbell, J., said: “ The effect of the false impression so created is in equity equivalent to that of fraud whether designedly fraudulent or honestly mistaken.”
The warranty in this case was not that there were no sunken logs or different materials from those actually encountered below the site where the lock was to be built, but it was a warranty that the drawings disclosed all that the Government knew and thereby the plaintiffs were induced to make no investigations for themselves upon this subject and hence to make a lower bid to perform the work than they otherwise would.
In conclusion, from the foregoing it is hardly necessary for me to say that from the facts as determined in Finding IV, I am of the opinion that the claimants are entitled to recover the sum of $6,150 in addition to the judgment as alloAved.